**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

GWENDOLYN JARRETT                                                                                   PLAINTIFF

v.                                              No. 4:14CV00744 JLH

RETZER GROUP, INC.                                                                                  DEFENDANT

**OPINION AND ORDER**

Gwendolyn Jarrett brings this action against her former employer, Retzer Group, Inc., alleging claims for wrongful discharge,[1] failure to accommodate, and retaliation in violation of the Americans with Disabilities Act[2] and the Arkansas Civil Rights Act,[3] and a claim for unlawful retaliation in violation of the Family Medical Leave Act.[4] Jarrett worked at a McDonalds owned by the Retzer Group until she was terminated on October 4, 2013, by a manager, Mary Claire. Jarrett alleges that the Retzer Group discharged her because she suffered from carpal tunnel syndrome, failed to accommodate her carpal tunnel syndrome, and retaliated against her for requesting an accommodation. Jarrett also alleges that the Retzer Group retaliated against her for taking FMLA leave to care for her mother. The Retzer Group has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Document #14. For the following reasons, the motion is granted in part and denied in part.

---

[1] Jarrett originally alleged a claim for discrimination in violation of the Age Discrimination in Employment Act but abandoned it in her response to the Retzer Group's motion for summary judgment. Document #24 at 1, ¶1.

[2] 42 U.S.C. § 12101, *et seq.*

[3] Ark. Code Ann. § 16-123-101, *et seq.*

[4] 29 U.S.C. § 2601, *et seq.*

**I.**

Jarrett worked at the McDonalds on Camp Robinson in North Little Rock from June 2010 to October 2013. The Retzer Group purchased the McDonalds in June 2012. Jarrett requested and was granted FMLA leave for the month of August 2013 in order to care for her mother, who was terminally ill and nearing the end of her life. Jarrett's mother passed away on September 1, 2013, and Jarrett was granted an additional 17 days of leave to organize her mother's affairs. She returned to work on September 18, 2013.

Jarrett was responsible for "prep" work, which included preparing biscuits. The Retzer Group chose to serve biscuits prepared from scratch, rather than frozen biscuits. Preparing biscuits from scratch requires an employee to knead the dough. Because Jarrett suffers from carpal tunnel, a doctor provided a note in March 2013 stating that, in his opinion, she should not knead dough. Claire asked Jarrett to make some biscuits on October 4, 2013, which was her first day acting as store manager. She had previously supervised the store as an area manager. Jarrett told Claire that she could not knead dough because she suffered from carpal tunnel syndrome and went to retrieve the March 2013 doctor's note from her car. Claire reviewed the note and told Jarrett that she would begin working on the grill, rather than doing prep. Jarrett responded that she could not work the grill either, citing a 2011 doctor's note excusing her from grill work. But Jarrett did not have a copy of the note.

The parties dispute the nature of the interaction that followed. Claire claims that Jarrett was argumentative and obnoxious for an extended period of time, grumbling as she went back to work. Jarrett claims that she simply informed Claire that she could not work the grill because of her hands, reminding Claire that she had been excused from grill work. Claire then terminated Jarrett's employment, citing insubordination.

II.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact is presented only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Spencer v. Jackson Cnty. Mo.*, 738 F.3d 907, 911 (8th Cir. 2013). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015).

III.

Jarrett brings three claims for discrimination under the ADA and the ACRA, alleging that the Retzer Group wrongfully discharged her on account of her carpal tunnel syndrome, violated the duty of an employer to provide a reasonable accommodation, and retaliated against her for requesting an accommodation. Document #2 at 3-4, ¶¶32-36. The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application

3

procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The same standard is used to evaluate claims brought under the ADA and the ACRA. *Duty v. Norton-Alcoa Proppants*, 293 F.3d 481, 490 (8th Cir. 2002).

**A.     Wrongful Discharge**

First, to prevail on her claim for wrongful discharge, Jarrett must establish a prima facie case of discrimination by showing that she (1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered adverse employment action because of her disability. *Walz v. Ameriprise Financial, Inc.*, 779 F.3d 842, 845 (8th Cir. 2015). She must either provide direct evidence of discrimination or circumstantial evidence of discrimination in satisfaction of the *McDonnell Douglas* burden-shifting analysis. *McDonnel Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L. Ed. 2d 668 (1973).

Jarrett has provided no direct evidence of discrimination. Therefore, the Court will apply the *McDonnell Douglas* burden-shifting analysis. 411 U.S. at 802-04, 93 S. Ct. at 1824-25. She must first present a prima facie case of intentional discrimination. *Id*. The burden then shifts to the Retzer Group to proffer a legitimate, nondiscriminatory reason for the action it took. *Id*. If the Retzer Group meets that burden, which is "minimal," the burden shifts back to Jarrett to show that the proffered nondiscriminatory reason is merely pretext for unlawful discrimination. *Id*. *See also Cody v. Prairie Ethanol, LLC*, 763 F.3d 992, 996 (8th Cir. 2014) (applying *McDonnell Douglas* burden-shifting framework in the ADA context). The Retzer Group assumes that Jarrett is able to establish a prima facie case but argues that she cannot show that its proffered reason for termination – insubordination – is mere pretext. Document #15 at 7. Insubordination is a legitimate reason for termination. *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1135 (8th Cir. 1999).

Because the Retzer Group has presented evidence of a legitimate, nondiscriminatory reason for its treatment of Jarrett, she must point to some evidence that the proffered reason is pre-textual. *Smith v. Allen Health Sys., Inc.*, 302 F.3d 827, 833 (8th Cir. 2002). Jarrett argues that Claire was dishonest about the interaction that precipitated her termination. Document #25 at 20. Claire claims that Jarrett was argumentative and obnoxious for an extended period of time, grumbling as she went back to work. Document #16-3 at 31. Claire told Jarrett that if she continued to yell, she would be terminated for insubordination. *Id*. at 34. But Jarrett claims that she simply informed Claire that she could not work the grill because of her carpal tunnel, reminding Claire that she had been excused from grill work. Document #16-1 at 48. Jarrett also provides deposition testimony from the President of the Retzer Group, Hal Burt, stating that if she had engaged in a reasonable conversation with Claire, she should not have been fired for stating she could not work the grill because of her hand problems. Document #24-1 at 21. Viewing the evidence of pretext in light of the Retzer Group's justification, if a jury were to believe Jarrett's version of her interaction with Claire, then the proffered reason for her termination–insubordination arising out of a heated verbal exchange–is pretext. Therefore, the Retzer Group is not entitled to judgment as a matter of law on the wrongful discharge claim.

**B.      Failure to Accommodate**

Second, to prevail on her failure to accommodate claim, Jarrett must show that the Retzer Group failed to fulfill its affirmative duty to reasonably accommodate her limitations, as required by the ADA. *E.E.O.C. v. Product Fabricators, Inc.*, 763 F.3d 963, 971 (8th Cir. 2014). The employer and employee must engage in the "interactive process" in order to determine whether an accommodation is necessary. *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 903 (8th Cir. 2009). The failure of an employer to engage in the interactive process is prima facie evidence that

the employer is acting in bad faith. *Fjellestad*, 188 F.3d at 952. "This interactive, accommodation-seeking process must be initiated by the disabled employee, who must alert his employer to the need for an accommodation and provide relevant details of [her] disability." *Schaffhauser v. United Parcel Service, Inc.*, 794 F.3d 899, 906 (8th Cir. 2015). If an employee does not make a request for accommodation, then the employer has no duty to accommodate. *Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002). But "an employee is not required to request accommodation in writing, nor to use the magic words of 'reasonable accommodation.'" *Fjellestad*, 188 F.3d at 952, n. 5. "The notice must merely make it clear to the employer that the employee wants assistance for his or her disability." *Id*.

The Retzer Group argues that its obligation to participate in the interactive process was not triggered because Jarrett never requested accommodation. Document #15 at 5. The only accommodation Jarrett requested, according to the Retzer Group, was that she not be required to knead dough and this request was fulfilled because she was allowed to do prep work without kneading dough. *Id*. It contends nothing in the record shows that Jarrett put the Retzer Group on notice that she could not work on the grill because of her carpal tunnel syndrome because while Jarrett insisted that she had a doctor's note indicating she was not permitted to work on the grill, the note was never produced. *Id*. at 6; Document #16-1 at 39. Jarrett argues that she put the Retzer Group on notice of her disability and requested accommodation when she told Claire that she could not work the grill because her hands would not allow it. Document #25 at 4; Document #16-1 at 48.

Jarrett has created a genuine issue of fact as to whether she requested an accommodation. First, the record includes a doctor's note, dated March 11, 2013, which states:

> Ms. Jarrett has been seen by me for medical reasons. Because of her medical condition it is my opinion that she not knead dough. Jobs without continuous hand and finger movement would be preferable.

Document #16-2.  Jarrett stated in her deposition that she first gave Claire the note in March 2013. Document #16-1 at 19.  While the note specifically restricts Jarrett from kneading dough, it also recommends jobs without continuous hand and finger movement.  Document #16-2.  It is disputed whether working on the grill requires continuous hand and finger movement.  Document #16-1 at 49.  Jarrett claims she worked on the grill before the Retzer Group purchased the Camp Robinson McDonalds, but that she was moved to prep work at the request of her doctor because she had to lift heavy equipment.  *Id*.  But Claire claims that grill work is one of the easiest jobs on the hands. Document #16-3 at 29.  When Claire became aware of Jarrett's disability is also disputed.  Jarrett insists that Claire became aware that she suffered from carpal tunnel syndrome in 2011, when she moved to prep.  Document #16-1 at 38.  But Claire claims that she did not know that Jarrett suffered from hand issues until October 4, 2013, when it is undisputed that Jarrett provided the March 2013 doctor's note to Claire.  Document #16-3 at 20.

Second, Claire admitted in her deposition that Jarrett specifically referenced her hands when she refused to work on the grill and that she made the reference prior to her termination.  *Id*. at 27. The doctor's note coupled with the statement about her hands allow a jury to tie the requested accommodation – that she not be required to work on the grill – to her existing medical restrictions. It is a question for the jury whether the evidence shows that Jarrett made it clear to the Retzer Group that she wanted assistance for her disability.  Therefore, the Retzer Group is not entitled to judgment as a matter of law on the failure to accommodate claim.

C.     **Unlawful Retaliation**

Third, to prevail on a claim for unlawful retaliation in violation of the ADA, Jarrett must show that she (1) engaged in a statutorily protected activity; (2) the Retzer Group took an adverse action against her, and (3) there was a causal connection between the adverse action and the

protected activity. *Hill v. Walker*, 737 F.3d 1209, 1218 (8th Cir. 2013). "The [Eighth Circuit] has held that a person who is terminated after unsuccessfully seeking an accommodation may pursue a retaliation claim under the ADA, if she had a good faith belief that the requested accommodation was appropriate." *Id*. (citing *Heisler v. Metro Council*, 339 F.3d 622, 632 (8th Cir. 2003)). Because there is a genuine issue of fact as to whether Jarrett requested an accommodation and whether the Retzer Group's proffered reason for termination was pretext, the Retzer Group is not entitled to judgment as a matter of law on the unlawful retaliation claim.

**IV**.

Jarrett brings a claim for unlawful retaliation under the FMLA, alleging that the Retzer Group terminated her for exercising her FMLA rights. Document #2 at 4, ¶38. Like her wrongful discharge and retaliation claims under the ADA, Jarrett's FMLA retaliation claim is evaluated under the *McDonnell Douglas* framework. *Wierman v. Casey's General Stores*, 639 F.3d 984, 999 (8th Cir. 2011). To establish a prima facie case, she must show that (1) she engaged in protected conduct; (2) she suffered a materially adverse employment action; and (3) the materially adverse action was causally linked to the protected conduct. *Id*. It is undisputed that Jarrett engaged in protected conduct when she requested and the Retzer Group granted FMLA leave for the month of August and part of September in 2013. And termination is a materially adverse employment action. *Van Horn v. Best Buy Stores, L.P.*, 526 F.3d 1144, 1148 (8th Cir. 2008).

However, the only evidence Jarrett produces to establish that the termination was linked to the exercise of her FMLA rights is that she was terminated approximately one month after she returned to work. Document #25 at 21. "Generally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Kiel*, 169 F.3d at 1136. For temporal proximity to be enough on its own to establish

causation, "the temporal proximity must be very close." *Hite v. Vermeer Mfg. Co.*, 446 F.3d 858, 866 (8th Cir. 2006). While there is no bright-line rule, the Eighth Circuit has previously held that one month is not enough. *Smith v. Fairview Ridges Hosp.*, 625 F.3d 1076, 1088 (8th Cir. 2010). Furthermore, the Eighth Circuit looks to the date an employer knew of an employee's use or planned use of FMLA leave, not the date it ended. *Sisk v. Picture People, Inc.*, 669 F.3d 896, 900 (8th Cir. 2012). Jarrett testified that she always notified the Retzer Group ahead of time. Document #16-1 at 24. Therefore, the shortest amount of time that could have passed is two months, which is too long to establish causation. Therefore, the Retzer Group is entitled to judgment as a matter of law on Jarrett's FMLA unlawful retaliation claim.

## CONCLUSION

For the foregoing reasons, the Retzer Group's motion for summary judgment is GRANTED in part and DENIED in part. Document #14.

IT IS SO ORDERED this 30th day of December, 2015.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE